**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **BRIDGE2 SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:16-cv-03770-SCJ** |
| | ) | |
| **RAZR MARKETING, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>JOINT PRELIMINARY REPORT AND DISCOVERY PLAN</u>**

1. Description of Case:

(a) Describe briefly the nature of this action.

**Plaintiff Bridge2Solutions, Inc. ("B2S" or "Plaintiff") has alleged causes of action, including misappropriation of trade secrets and for breach of a service agreement ("Agreement") between Plaintiff and Defendant RAZR Marketing, Inc. ("RAZR" or "Defendant") whereby Plaintiff agreed to develop a rewards system and website for Defendant to use with its client, First Data Corporation, for the redemption of rewards and/or points for merchandise, travel, and/or event tickets. Defendant has denied Plaintiff's claims asserting, among other things, Defendant developed its own website relying upon information and technology that is commonly known and used in**

**the loyalty/rewards industry. Defendant has asserted counterclaims for breach of contract, unjust enrichment, fraudulent misrepresentation, and negligent misrepresentation. Plaintiff has denied the same.**

(b) Summarize the facts of this case. The summary should not be argumentative nor recite evidence.

1. **Plaintiff's Summary. In May 2008, Plaintiff and Defendant entered into a Service Agreement under which Plaintiff agreed to develop a rewards system and website for Defendant for the purposes of redemption of rewards and/or points for merchandise, travel, and/or event tickets. The website provided awards programs for First Data Corporation ("First Data") customers. Under the Agreement, Defendant, among other things, marketed the awards program while Plaintiff operated in the background developing, customizing, hosting, and operating the website.**

**The Agreement incorporated, by reference, the terms and provisions of a pre-existing Confidentiality and Non-Disclosure Agreement and also provided that B2S retained all rights in its intellectual property. The Agreement also contained a non-solicitation clause which provided that Defendant would not during the term of the Agreement and for one year after termination contact Plaintiff store/award suppliers directly and that**

**Defendant would not negotiate and/or execute a separate contract for similar services from Plaintiff store/awards suppliers without the knowledge or consent of Plaintiff.**

**From May 2008 to the present, Defendant has had access to Plaintiff's confidential information through Defendant's access to Plaintiff's catalog, Administration and Configuration Tools, various integration guides, custom-development Documentation, and custom-developed Security/SSO processes. All of these features were and are not generally known to the public. These secret features are valuable to Plaintiff.**

**Prior to executing the Agreement, Defendant was a marketing agency no incentive or loyalty award programs similar to Plaintiff's system, no bank management tools, and no awards catalog. Nevertheless, in April of 2015, without any notice to Plaintiff, Defendant's use of Plaintiff's platform in use at First Data suddenly dropped to virtually nothing. This sudden drop caused Plaintiff to investigate. This is when Plaintiff learned that Defendant had developed its own loyalty/awards system with numerous features similar to those in Plaintiff's system.**

**In April 2015, Plaintiff, through counsel, sent a demand letter to Defendant alleging that Defendant was in material breach of the Agreement.**

**Plaintiff alleged that Defendant had violated certain restrictive covenants relating to Plaintiff's suppliers, was in violation of a good faith and cooperation provision, as well as a provision on the renewal of the Agreement. In a May 20, 2015, letter in response, Defendant, through counsel, denied there was a material breach (or any breach) of the Agreement, and refused to take the steps set forth in Plaintiff's letter to cure the same.**

**On October 11, 2016, Plaintiff commenced this action. Plaintiff alleges that Defendant breached the Agreement in two ways. First, Plaintiff contends that Defendant breached the non-solicitation provision of the Agreement by negotiating and/or executing separate contracts for like or similar services from Plaintiff stores/award suppliers without Plaintiff's knowledge. Second, Plaintiff alleges that Defendant breached the pre-existing confidentiality agreement, which was incorporated by reference into the Agreement, by using Plaintiff's secret and/or confidential information to develop an awards system that is remarkably similar to and competitive with Plaintiff's awards system.**

**Plaintiff's final claim is for trade secrets misappropriation. Plaintiff contends that Defendant used Plaintiff's trade secrets to develop an awards system that competes with the awards system developed by Plaintiff, in**

**violation of the Georgia Uniform Trade Secrets Act as well as the common law of Georgia.**

**Defendant has counterclaimed alleging Plaintiff breached the Agreement by overcharging Defendant for the services provided over a period of years and by soliciting Defendant's clients. Plaintiff denies these allegations.**

2. **<u>Defendant's Summary</u>. In May 2008, Defendant selected and entered into a contract with Plaintiff to provide a platform through which Defendant's clients and potential clients could have their customers redeem loyalty points for certain goods and services. At the time the Agreement was executed, Plaintiff was one of many entities that offered a platform to support loyalty rewards programs and the redemption of points on the same. The platform, while necessary, was only one part of the overall solution required to operate the loyalty rewards program.**

**The initial term of the Agreement was five (5) years, with the Agreement automatically renewing for consecutive one (1) year periods unless notice of non-renewal was provided. Sometime in 2013, Defendant, which brought all of the clients to the platform being provided by Plaintiff, determined it was in its best interest to develop its own platform to support**

**those clients. Following the independent completion of that platform, Defendant migrated its clients from the Plaintiff's platform to its own.**

**In April 2015, Plaintiff, through counsel, sent a demand letter to Defendant alleging that Defendant was in material breach of the Agreement. Plaintiff alleged that Defendant had violated certain restrictive covenants relating to Plaintiff's suppliers, was in violation of a good faith and cooperation provision, as well as a provision on the renewal of the Agreement. In a May 20, 2015, letter in response, Defendant, through counsel, denied there was a material breach (or any breach) of the Agreement, and refused to take the steps set forth in Plaintiff's letter to cure the same. As a result of the failure/refusal to cure the material breach identified by the Plaintiff, the Agreement terminated on May 22, 2015.**

**On October 11, 2016, over seventeen (17) months after the Agreement was terminated, Plaintiff commenced this action. Plaintiff alleges, among other things, that Defendant violated certain non-compete and confidentiality covenants in the Agreement and misappropriated trade secrets in violation of Georgia's Uniform Trade Secrets Act. The core of Plaintiff's allegations rests on its belief that the form, feel and function of Defendant's platform is so similar to its own that Defendant must have used Plaintiff's confidential/trade**

**secret information to build its platform. Defendant denies that any confidential information was used in the creation of its platform since its platform is based on systems and technology readily available in the industry. Defendant also denies any agreement or business done with Plaintiff's suppliers is a violation of the Agreement under either the express terms of the Agreement or as provided by Florida law, which governs the same. Defendant also denies that there has been any breach of the Agreement, material or otherwise, and that there was any violation of the Georgia Uniform Trade Secrets Act (and affirmatively alleges that if any trade secrets act applies, it is Florida's trade secret law) because Defendant's platform was independently developed by Defendant.**

**Defendant has counterclaimed alleging Plaintiff breached the Agreement by consistently overcharging Defendant for the services provided over a period of years. Defendant alleges that during the term of the Agreement, Plaintiff negotiated and received a discount on its merchandise transaction fees, but did not pass that discount on through to Defendant, resulting in overpayment by Defendant. Defendant alleges that Plaintiff knew of this overpayment for years but did not disclose the same. Defendant also alleges that Plaintiff breached the Agreement by soliciting Defendant's clients.**

(c) The legal issues to be tried are as follows:

**1. Whether Defendant breached the Agreement by soliciting Plaintiff's suppliers without Plaintiff's knowledge;**

**2. Whether Defendant breached the Agreement by using Plaintiff's confidential/trade secret information, without Plaintiff's permission, to develop a competing platform;**

**3. Whether Defendant misappropriated Plaintiff's trade secrets by using Plaintiff's confidential/trade secret information, without Plaintiff's permission, to develop a competing platform;**

**4. The proper measure of Plaintiff's damages.**

**5. Defendant's liability for attorneys' fees under the Uniform Trade Secrets Act and the contract at issue.**

**6. Whether Plaintiff breached the Agreement by overcharging Defendant for the services Plaintiff provided;**

**7. Whether Plaintiff breached the Agreement by soliciting Defendant's clients.**

**8. The proper measure of Defendant's damages.**

**9. Plaintiff's liability for attorney's fees under the Agreement.**

(d) The cases listed below (include both style and action number) are:

(1) Pending Related Cases: **None.**

(2) Previously Adjudicated Related Cases: **None.**

3. This case is complex because it possesses one (1) or more of the features listed below:

__ (1) Unusually large number of parties

__ (2) Unusually large number of claims or defenses

__ (3) Factual issues are exceptionally complex

_X_ (4) Greater than normal volume of evidence

_X_ (5) Extended discovery period is needed

__ (6) Problems locating or preserving evidence

__ (7) Pending parallel investigations or actions by government

__ (8) Multiple use of experts

_X_ (9) Need for discovery outside United States boundaries

___ (10) Existence of highly technical issues and proof

4. Counsel:

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff: **Stephen Dorvee**
**ARNALL GOLDEN GREGORY LLP**
**Suite 2100**
**171 17th Street NW**
**Atlanta, GA 30363**
**stephen.dorvee@agg.com**

Defendant: **Thomas Harlan**
***Admitted pro hac vice***
**MADIGAN, DAHL & HARLAN, P.A.**
**Campbell Mithun Tower**
**222 South Ninth Street, Suite 3150**
**Minneapolis, MN 55402**
**Email: harlan@mdh-law.com**

5. Jurisdiction:

Is there any question regarding this court's jurisdiction?

**Plaintiff**: **No.**

**Defendant: No. But, Defendant contends that venue is improper.**

If "yes," please attach a statement, not to exceed one (1) page, explaining the jurisdictional objection. When there are multiple claims, identify and discuss separately the claim(s) on which the objection is based. Each objection should be supported by authority.

6. Parties to This Action:

(a) The following persons are necessary parties who have not been joined: **None known.**

(b) The following persons are improperly joined as parties: **None.**

(c) The names of the following parties are either inaccurately stated or necessary portions of their names are omitted: **None.**

(d) The parties shall have a continuing duty to inform the court of any contentions regarding unnamed parties necessary to this action or any contentions regarding misjoinder of parties or errors in the statement of a party's name.

6. Amendments to the Pleadings:

Amended and supplemental pleadings must be filed in accordance with the time limitations and other provisions of Fed.R.Civ.P. 15. Further instructions regarding amendments are contained in LR 15.

(a) List separately any amendments to the pleadings that the parties anticipate will be necessary.

**Plaintiff:**

**None presently anticipated.**

**Defendant:**

**None presently anticipated.**

(b) Amendments to the pleadings submitted LATER THAN THIRTY (30) DAYS after the preliminary report and discovery schedule is filed, or should have been filed, will not be accepted for filing, unless otherwise permitted by law.

7. Filing Times for Motions:

All motions should be filed as soon as possible. The local rules set specific filing limits for some motions. These times are restated below.

All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery, unless the filing party has obtained prior permission of the court to file later. Local Rule 7.1A(2).

(a) *Motions to Compel*: before the close of discovery or within the extension period allowed in some instances. Local Rule 37.1.

(b) *Summary Judgment Motions*: within thirty (30) days after the close of discovery, unless otherwise permitted by court order. Local Rule 56.1.

(c) *Other Limited Motions*: Refer to Local Rules 7.2; 7.2B, and 7.2E, respectively, regarding filing limitations for motions pending on removal, emergency motions, and motions for reconsideration.

(d) *Motions Objecting to Expert Testimony*: Daubert motions with regard to expert testimony no later than the date the proposed pretrial order is submitted. Refer to Local Rule 7.2F.

8. Initial Disclosures:

The parties are required to serve initial disclosures in accordance with Fed.R.Civ.P. 26. If any party objects that initial disclosures are not appropriate, state the party and basis for the party's objection.

**No objections at this time.**

9. Request for Scheduling Conference:

Does any party request a scheduling conference with the Court? If so, please state the issues which could be addressed and the position of each party.

**None requested at this time.**

10. Discovery Period:

The discovery period commences thirty (30) days after the appearance of the first defendant by answer to the complaint. As stated in LR 26.2A, responses to initiated discovery must be completed before expiration of the assigned discovery period.

Cases in this court are assigned to one of the following three (3) discovery tracks: (a) zero (0)-months discovery period, (b) four (4)-months discovery period, and (c) eight (8)-months discovery period. A chart showing the assignment of cases to a discovery track by filing category is contained in Appendix F. The track

to which a particular case is assigned is also stamped on the complaint and service copies of the complaint at the time of filing.

This case is assigned to a four month discovery track.

Please state below the subjects on which discovery may be needed:

**Plaintiff:**

**At this time, Plaintiff anticipates discovery will be needed on Defendant's development of its awards platform; Defendant's policies, procedures, and practices regarding Plaintiff's confidential/trade secret information while Plaintiff was servicing Defendant's awards platform; Defendant's communications and negotiations relating to agreements with suppliers; Defendant's policies, procedures, and practices regarding its business relationships with Plaintiff, First Data, Paramax, and RewardStream; all allegations set forth in Defendant's counterclaims; Defendant's purported damages.**

**Defendant:**

**Defendant asserts discovery will be needed on: Plaintiff's purported damages; all allegations set forth in Plaintiff's Complaint and Answer to Defendant's Counterclaim; the form, function, feel and design of: (i) the Plaintiff's platform, (ii) Defendant's platform, (iii) RewardStream's platform,**

**and (iv) Paramax's platform; the origins of the Plaintiff's platform; the purported custom development of the Plaintiff's program to support Defendant's clients; the agreement between the Plaintiff and Best Buy relative to the amounts paid for the redemption of goods and services, and documents related to the same; the agreement between Plaintiff and Sears regarding the redemption of points for goods and services, and documents related to the same; the agreement between Plaintiff and other suppliers it had with respect to the redemption of points for goods and services, and documents related to the same; and Plaintiff's contacts and communications with Defendant's clients. Defendant reserves the right to seek discovery on other issues that are reasonably calculated to lead to the discovery of admissible evidence that may become apparent or necessary as the case progresses.**

If the parties anticipate that additional time beyond that allowed by the assigned discovery track will be needed to complete discovery or that discovery should be conducted in phases or be limited to or focused upon particular issues, please state those reasons in detail below:

**Defendant:**

**Defendant requests that the discovery period be extended to a six month discovery track because third-party discovery in Canada will in all**

**likelihood, be necessary. Accordingly, additional time will be needed to complete discovery.**

**<u>Plaintiff</u>:**

**Plaintiff agrees that the discovery period should be extended to a six month track.**

11. Discovery Limitation:

(a) What changes should be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or Local Rules of this Court, and what other limitations should be imposed?

**<u>Plaintiff</u>:**

**Plaintiff does not object to Defendant's proposed changes below.**

**<u>Defendant</u>:**

**Defendant requests that the statutory limit of twenty-five (25) interrogatories be increased to thirty-five (35), and that the limit of ten (10) depositions be increased to fifteen (15).**

(b) Is any party seeking discovery of electronically stored information? **_X_** YES ___ NO

If "yes"

(1) The parties have discussed the sources and scope of the production of electronically stored information and have agreed to limit the scope of production (e.g., accessibility, search terms, date limitations, or key witnesses) as follows:

**Parties Joint Statement:**

**If ESI is a subject of discovery, the Parties agree it should be conducted so as to comply with the Federal Rules of Civil Procedure and the Local Rules of this Court.**

**To the extent the discovery of ESI is sought, the Parties agree to conduct searches based upon agreed upon search terms targeting agreed upon named and/or identified witnesses or custodians of records, unless the Parties reach impasse and require Court resolution of search terms. The Parties will also work to agree upon named and/or identified witnesses or custodians of record from whom ESI will be collected, unless the Parties reach impasse and require the assistance of the Court.**

**The Parties agree to work in good faith to further refine the scope of production through an agreement on custodians and specific search terms and parameters.**

12. Other Orders:

What other orders do the parties think that the Court should enter under Rule 26(c) or under Rule 16(b) and (c)?

**The parties will seek entry of a Protective Order, in compliance with this Court's standing order to protect the confidentiality of various proprietary and/or confidential business information.**

13. Settlement Potential:

(a) Counsel for the parties certify by their signatures below that Stephen M. Dorvee and Thomas P. Harlan conducted a Rule 26(f) conference that was held on January 4, 2017 and that they discussed the possibility of settlement at that time.

For Plaintiff: Lead counsel (signature) **/s/ Stephen M. Dorvee**

Other participants: Morgan E. M. Morrison

For Defendant: Lead counsel (signature) **/s/ Thomas P. Harlan**

Other participants: Blair A. Harrington
Brandt F. Erwin
Gail Podolsky

(b) All parties were promptly informed of all offers of settlement and following discussion by all counsel, it appears that there is now:

(____) A possibility of settlement before discovery.

( X ) A possibility of settlement after discovery.

(____) A possibility of settlement, but a conference with the judge is needed.

(____) No possibility of settlement.

(c) Counsel ( **X** ) do or (____) do not intend to hold additional settlement conferences among themselves prior to the close of discovery. The proposed date of the next settlement conference is **to be determined by the parties.**

(d) The following specific problems have created a hindrance to settlement of this case. **None.**

14. Trial by Magistrate Judge:

Note: Trial by a Magistrate Judge will be a jury trial if a party is otherwise entitled to a jury trial.

(a) The parties **do not** consent to having this case tried before a magistrate judge of this court.

Respectfully submitted this 18th day of January, 2017.

*s/ Stephen M. Dorvee*
Stephen M. Dorvee
Ga. Bar No. 478998
Morgan E. M. Morrison
Ga. Bar No. 470983
ARNALL GOLDEN GREGORY LLP
171 17th St. NW, Suite 2100
Atlanta, GA 30363
Telephone: (404) 873-7010
Fax: (404) 873-7011
Email: stephen.dorvee@agg.com

*Attorneys for Plaintiff*

*s/ Thomas P. Harlan*
(*with permission by Stephen Dorvee*)
Thomas P. Harlan
Minnesota Bar No. 210870
*Admitted Pro Hac Vice*
Brandt F. Erwin
Minnesota Bar No. 392171
*Admitted Pro Hac Vice*
MADIGAN, DAHL & HARLAN, P.A.
222 South Ninth Street, Suite 3150
Minneapolis, MN 55402
Telephone: (612) 604-2000
Fax: (612) 604-2599
Email: harlan@mdh-law.com;
erwin@mdh-law.com

Gail Podolsky
Georgia Bar No. 142021
CARLTON FIELDS JORDEN BURT, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, GA 30309
Telephone: (404) 815-3400
Fax: (404) 815-3415
Email: gpodolsky@carltonfields.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

On January 18, 2017, I electronically filed this document with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to all counsel of record.

/s/Stephen M. Dorvee
Stephen M. Dorvee
Georgia Bar No. 226989

Attorney for Plaintiff